IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| PATRIOTS BANK, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. 2:22-cv-4080-NKL |
| | ) | |
| BRAD KRANTZ | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**ORDER**

Defendant Brad Krantz appraised collateral for Plaintiff Patriots Bank ("the Bank"). The Bank claims it relied on Mr. Krantz's appraisals to determine whether to loan money; more specifically, to determine whether certain collateral could secure various loans. The Bank claims that the appraisals performed by Mr. Krantz were knowingly false, and therefore fraudulent, in violation of Missouri law. The Bank now moves for summary judgment on its fraud claims against Mr. Krantz. *See* Doc. 35 (Mot. Summary J.); Doc. 36 (Sugg'n Supp. Summary J.).

I. **LEGAL STANDARD**

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Higgins v. Union Pac. R.R.*, 931 F.3d 664, 669 (8th. Cir. 2019) (quotation marks and citation omitted); Fed. R. Civ. P. 56(a). A factual dispute is material when it affects the outcome of the case and genuine when evidence exists to support both sides of the dispute; that is, "a reasonable jury could return a verdict for either party." *Morrow v. United States*, 47 F.4th 700, 704 (8th Cir. 2022). The moving party must prove both

1

that there are no genuine and material factual disputes and that she is entitled to judgment as a matter of law. *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010); Fed. R. Civ. P. 56(a).

"[I]f the movant bears the burden of proof on a claim at trial, then its burden of proof is greater. It must lay out the elements of its claim, citing the facts it believes satisfies those elements and demonstrating why the record is so one-sided as to rule out the prospect of the non-movant prevailing. If the movant fails to make that initial showing, the Court must deny the motion, even if the opposing party has not introduced contradicting evidence in response." Federal Practice & Procedure § 2727.1.

## II.    FACTS[1]

The Bank is a Kansas state banking corporation. Mr. Krantz is a licensed residential appraiser who resides in Missouri. Prior to the appraisals at issue in this case, Mr. Krantz appraised residential property for the Bank. This case involves loans to three entities made between August 2018 and November 2019, all of which were secured by commercial property appraised by Mr. Krantz (together, the "Krantz Appraisals").

First, the Bank loaned Black River Motel, LLC $278,862.00, secured by a priority lien on real and personal property. It is undisputed that the Bank engaged Mr. Krantz to appraise the property to determine its value as collateral. However, the Parties dispute whether the Bank intended to rely on the appraisal to make a lending decision and whether the appraisal was actually

---

[1] These facts are viewed in the light most favorable to Mr. Krantz, the non-movant, and drawing all justifiable inferences in his favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014). Furthermore, as explained in detail below, the Court considers the affidavit Mr. Krantz submitted with his opposition materials.
2

false. *See* Doc. 45, at p. 2, ¶¶ 5, 7; *see also* Doc. 36, p. 5, ¶¶ 5, 7.[2]  Mr. Krantz attested[3] that the Bank told him that it simply needed the appraisal "for the file."  Doc. 45, at p. 2, ¶¶ 5, 7.  Mr. Krantz appraised the collateral property and provided the appraisal to the Bank.

Second, the Bank loaned CRAZ Investments, LLC $2,998,919.50.  The CRAZ Loan was secured by priority liens on real and personal property, as described in three separate deeds of trust. *See* Doc. 45, at p. 3, ¶¶ 9–11; Doc. 36, at p. 5–6, ¶¶ 9–11.  The Parties agree that the Bank hired Mr. Krantz to appraise the property securing the CRAZ loan, but they dispute whether the appraisal was false and whether it was meant to influence the Bank's lending decisions.  Doc. 36, p. 6, ¶¶ 12, 15; Doc. 45, p. 3–4, ¶¶ 12, 15.

Third, the Bank made two loans to Jonesburg Sawmill & Pallet Co., Inc.  The first loan totaled $351,775.00 and the second totaled $1,005,065.68 (together, "the Jonesburg Loans").  The Jonesburg Loans were secured by real and personal property owned by Jonesburg.  The Bank hired Mr. Krantz to appraise the collateral property.  Again, the Parties dispute whether the appraisal was false and whether it was meant to influence the Bank's lending decisions.  Doc. 36, p. 8, ¶¶ 20–22; Doc. 45, p. 6, ¶¶ 20–22.

Christopher Harbison is the principal of Black River, CRAZ, and Jonesburg, the three entities to which the Bank made the relevant loans.  Mr. Krantz attested that Mr. Harbison had a personal relationship with Scott and Cameron Cooper, the president and vice president of the Bank.  Doc. 45-1 (Affidavit of Mr. Krantz), at ¶ 1.  Mr. Krantz stated that he told Mr. Harbison that he was not licensed to perform commercial appraisals, and Scott and Cameron Cooper were usually

---

[2] To avoid confusion, the Court will cite to the ECF page number, rather than a document's internal pagination.

[3] It appears no witnesses were deposed in this case.

present when Mr. Krantz interacted with Mr. Harbison. Doc. 45-1, at ¶ 9–10. The Bank—through Scott and Cameron Cooper—nevertheless informed Mr. Krantz that there would be a six-month delay to get another appraiser and that the appraisals were just "for the files." *Id.* at ¶ 10. The Bank encouraged Mr. Krantz to work with Mr. Harbison directly to perform the appraisals. *Id.* at ¶ 11. No one at the Bank ever asked if Mr. Krantz was licensed to perform commercial appraisals. Mr. Krantz had previously appraised only residential property for the Bank, and those appraisals stated he was a residential appraiser and included a copy of his license. *Id.* at ¶ 3. It appeared to Mr. Krantz that both the Bank and Mr. Harbison were "eager" to move forward, and Mr. Harbison and the Coopers "assured" Mr. Krantz there would be no negative consequences. *Id.* at ¶ 10. After the appraisals for the relevant loans, Mr. Krantz continued to perform residential appraisals for the Bank.

Years later, in August 2021, the Bank attempted to hire Mr. Krantz to perform an updated appraisal of the property securing the Jonesburg Loans. Mr. Krantz informed the Bank that he wanted no further involvement with the commercial properties. Doc. 45-1, at ¶¶ 5, 8. During that conversation, the Parties agree that Mr. Krantz told the Bank that he was not licensed to perform commercial appraisals. On August 5, 2021, at the Bank's insistence, Mr. Krantz signed a declaration (the "2021 Declaration"). The Bank informed Mr. Krantz that, if he signed, he "would remain in good standing with" the Bank. *Id.* at ¶ 14. The 2021 Declaration states that Mr. Krantz was not qualified or licensed to perform commercial appraisals, and that he felt threatened by Mr. Harbison if he did not perform the appraisal as Mr. Harbison directed. Mr. Krantz swore in the 2021 Declaration that Mr. "Harbison told [Mr. Krantz] what he needed the values to come out to be . . . To do the appraisal, [Mr. Krantz] just went off what Harbison gave [Mr. Krantz] and came up with the market values that [Mr. Harbison] wanted." Doc. 36-1, at ¶ 12. In the 2021

4

Declaration, Mr. Krantz also said that Mr. Harbison provided financial assistance to Mr. Krantz to aid him in resolving personal matters, specifically expenses associated with Mr. Krantz's child custody dispute and child support payments.

However, in his May 2023 affidavit submitted in opposition to the Bank's Motion for Summary Judgment ("Opposition Affidavit"), Mr. Krantz states that he did more than just rely on Mr. Harbison. Mr. Krantz swore that while he relied on Mr. Harbison's information, Mr. Krantz independently "used his best efforts to come up with the actual values of the properties and performed the work and services as described in each appraisal." Doc. 45-1, at ¶ 4. Mr. Krantz consulted a licensed commercial appraiser to guide him and followed the Uniform Standards of Professional Appraisal Practices. *Id.* at ¶¶ 13. Mr. Krantz also did his own research to appraise the property, including research into surrounding properties and industry research related to the collateral properties. Mr. Krantz further attested that he visited each of the appraised properties. *Id.*

The Bank responds, relying only on the 2021 Declaration, that Mr. Krantz did no additional work to determine the value of the collateral securing the relevant loans. Instead, Mr. Krantz simply appraised the property at the value Mr. Harbison said he needed. Doc. 36, p. 10, ¶ 35.

### III. DISCUSSION

#### A. Whether The Court Must Disregard Mr. Krantz's Affidavit

##### 1. Sham Affidavit Rule

As a preliminary matter, the Bank argues that the Court must disregard the Opposition Affidavit because it is a sham affidavit. An affidavit is a sham affidavit if it contradicts prior testimony or is a "sudden and unexplained revision of testimony [that] creates an issue of fact where none existed before." *Button v. Dakota, Minnesota & E.R.R. Corp.*, 963 F.3d 824, 830 (8th Cir. 2020) (quoting *Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999)). In general, the

5

sham affidavit rule is "narrow" and should be applied with caution. *Baker v. Silver Oak Senior Living Mgmt. Co., L.C.*, 581 F.3d 684, 691 (8th Cir. 2009); *City of St. Joseph, Mo. v. Sw. Bell Tel.*, 439 F.3d 468, 476 (8th Cir. 2006) ("District courts, however, must use extreme care in examining [sham affidavit] issues[.]"). This is in part because "a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence. Aggressive invocation of the rule also threatens to ensnare parties who may have simply been confused during their deposition testimony and may encourage gamesmanship by opposing attorneys." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). The Court must "examine [sham affidavit] issues with extreme care, and only in circumstances . . . where the conflicts between the deposition[4] and affidavit raise only sham issues should summary judgment be granted." *See Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1366 (8th Cir. 1983).

Especially because the Court must view the evidence in the light most favorable to Mr. Krantz and must use extreme care when determining whether an affidavit is a sham, *id.* at 1364, 1366, the Court will consider the complete Opposition Affidavit for the purposes of resolving the Bank's Motion. While Mr. Krantz's Opposition Affidavit in limited ways contradicts the earlier 2021 Declaration, the Opposition Affidavit provides an explanation for the discrepancies. New facts, when accompanied by a reasonable explanation, should not ordinarily lead to the striking of

---

[4] Mr. Krantz was not deposed in this case. The Bank claims that the conflict between Mr. Krantz's 2021 Declaration, drafted by the Bank before this case began, and the Opposition Affidavit justify the invocation of the sham affidavit rule. The Bank cited no authority holding, or even suggesting, that the sham affidavit rule can be applied in any context other than when a later-filed affidavit conflicts with a *deposition*. The Court found no case applying the sham affidavit rule in a similar context, and there is reason to believe that the rule is inapplicable. *See generally Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) ("The main practical reason supporting the sham affidavit doctrine is that prior depositions are more reliable than affidavits."). Nevertheless, the Court assumes for the purposes of this Motion only that the sham affidavit rule applies even when no deposition has occurred.

6

a declaration as a sham. *See Kim v. Ingersoll Rand Co.*, 921 F.2d 197, 199 (8th Cir. 1990) (in *Camfield* "we held in the context of summary judgment that *unless a party explains the conflict in his own testimony*, discrepancies in testimony do not create credibility issues for a jury when the district court perceives a readily apparent sham," and finding adequate explanation in the plaintiff's trial testimony of the discrepancy with prior testimony) (emphasis added); *see also Camfield*, 719 F.2d at 1366 ("The issues Camfield thereby injected, however, were not genuine because the circumstances in this case do not suggest legitimate reasons for Camfield's filing of the inconsistent affidavit."). Mr. Krantz's affidavit acknowledges the 2021 Declaration and the statements he made in it. He also explained that he made them at the Bank's direction, to remain "in good standing." Indeed, the 2021 Declaration was drafted by the Bank's attorney and Mr. Krantz was not represented at the time. And, because it appears no depositions occurred in this case, the Opposition Affidavit was Mr. Krantz's first opportunity in this litigation to fully explain his side of the story. The circumstances thus suggest a plausible, legitimate reason for any contradictions between the later-filed Opposition Affidavit and the 2021 Declaration.

This is not a situation that justifies invoking the Court's narrow authority to strike a sham affidavit. To the contrary, applying the sham affidavit rule here would encourage gamesmanship and place the Court in the center of factual and credibility disputes appropriately left to the factfinder, risking that true controversies never make it to a jury. It will be for the jury to weigh the conflicting testimony, and any credibility issues raised by the affidavits.

### 2. Admissibility of Affidavits

In response to most, if not every, paragraph in the Opposition Affidavit, the Bank vaguely objects that the fact stated is not supported by personal knowledge, would not be admissible at trial, and that Mr. Krantz fails to show that he is competent to testify on the matters stated. The Bank supports its objections with neither explanation, argument, nor citation. Because the Bank

7

failed to make specific arguments why specific evidence cannot be presented in an admissible way at trial, the Court overrules the objections for the purposes of this Motion only. Put simply, the Bank's vague objections are not enough to meet its burden. *Oglesby v. Lesan*, 929 F.3d 526, 534–35 (8th Cir. 2019) ("However, [objecting party] makes no showing that these documents *could not* be presented at trial in an admissible form. We thus find that the district court did not abuse its discretion in admitting these documents."). That said, nothing in this Order should be construed to resolve or suggest whether the 2021 Declaration, the Opposition Affidavit, or any facts asserted therein, are actually admissible at trial. The merits of the evidentiary issues have not yet been properly raised.

The Bank also points to "additional deficiencies" that suggest the Opposition Affidavit is deficient, including typographical errors and the self-serving nature of the statements. Doc. 47, at 16 (citing *Leidig v. Honeywell, Inc.,* 850 F. Supp. 796, 799 (D. Minn. 1994)). The Court is not persuaded by these arguments. As an initial matter, the situation in *Leidig*, in which the challenged affidavit was a verbatim copy of the party's statement of facts, is clearly distinguishable. If anything, it does appear that the *Bank's* Statement of Material Facts is all but a verbatim copy of the Affidavit of Justin Hobbs, both of which almost exactly mirror the allegations in the Complaint. But Mr. Krantz's Opposition Affidavit does not. Further, a minor mistake, such as alternating between "I" and "he" to refer to Mr. Krantz, is far from a reason to strike the Opposition Affidavit. At best, any mistakes are for a jury to consider. Furthermore, while the Court cannot allow conclusory statements or bare allegations to defeat an otherwise proper summary judgment motion, the Opposition Affidavit generally does not contain either. It merely reflects a version of the events that differs from the Bank's. That Mr. Krantz's affidavit is "self-serving" is not independently enough to strike the Opposition Affidavit. Otherwise, all affidavits would be stricken unless their

8

contents helped the opposing party, rather than the affiant. In the context of this case, the Bank is effectively asking the Court to resolve a factual dispute that should be left for the jury.

**B. Fraud**

To prove fraud under Missouri law, the Bank must prove that Mr. Krantz (1) made a representation to the Bank; (2) that was false; (3) the representation was material; (4) Mr. Krantz knew the representation was false or was ignorant of the truth; (5) Mr. Krantz intended that the Bank rely on the statement; (6) the Bank was ignorant of the falsity of the statement; (7) the Bank relied on the truthfulness of Mr. Krantz's representation; (8) the Bank had a right to rely on the representation; (9) the Bank's reliance caused it injury. *Stander v. Szabados*, 407 S.W.3d 73, 81 (Mo. App. 2013). "The party alleging fraud bears the burden of proving each element and must satisfy that burden with clear and convincing evidence." *Kempton v. Dugan*, 224 S.W.3d 83, 87 (Mo. App. W.D. 2007). "Fraud will not be presumed but may be inferred and shown by circumstantial evidence." *Id*. at 88. "Failure to prove any of the requisite elements is fatal to a claim for fraud." *Blanke v. Hendrickson*, 944 S.W.2d 943, 944 (Mo. Ct. App. 1997).

The Bank argues that Mr. Krantz's appraisals were false because Mr. "Krantz misrepresented the collateral's value and his qualifications." Doc. 36, at 12. Relying solely on Mr. Krantz's 2021 Declaration, the Bank argues that because Mr. Krantz said that he simply relied on numbers provided by Mr. Harbison to appraise the collateral property, the appraisals are "false." The Bank also contends that Mr. Krantz's certification in the appraisals that he was unbiased is false because Mr. Krantz was given money by Mr. Harbison to assist Mr. Krantz with child support obligations and legal fees associated with his divorce. The Bank claims that it has been unable to recover the outstanding balance of the now-defaulted relevant loans and related foreclosure costs because of Mr. Krantz's misrepresentations.

9

Because the Court finds that there are genuine and material factual disputes about whether Mr. Krantz's appraisals were "false," whether he knew they were false, and whether any false representation damaged the Bank. The Court will only address these elements.[5]

### C. Whether There Is a Jury Question Regarding Element Two and Four: Falsity and Knowledge

The Court begins with falsity. The Bank first argues that there is no genuine dispute that Mr. Krantz's appraisals were false because Mr. Krantz admitted that the appraisals were just based on the values that Mr. Harbison provided. Doc. 36, at 13. While Mr. Krantz did swear in the 2021 Declaration that Mr. Harbison provided him the information for his appraisals and Mr. Krantz just relied on those numbers to appraise the relevant collateral, a jury could still conclude that that Mr. Krantz appraised the collateral property accurately. This is because Mr. Krantz also has sworn that his appraisals were accurate and the result of his own independent research and explained the contradictory statements in his earlier declaration. Furthermore, the Bank simply *assumes* that if Mr. Krantz relied only on the values provided by Mr. Harbison, those values incorrectly inflated the value of the property. While evidence that Mr. Krantz relied exclusively on Mr. Harbison's numbers may be relevant, it is not sufficient to show that the appraisals were false. Because the Bank claims that it relied on the appraisal values to determine whether it should loan money, the Bank must prove that those *values* were false at the time of the appraisal. *Joel Bianco Kawasaki Plus v. Meramec Valley Bank,* 81 S.W.3d 528, 538 n. 6 (Mo. banc 2002) ("The falsity of the representation must be determined as of the time it was made and as of the time it was intended to

---

[5] Because this is a summary judgment motion, the Court resolves the issues only on the arguments of the Parties and on the portions of the record identified by them. *See generally Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018)

be and was relied on.") (internal quotation omitted). But the Court has found no evidence in the record to show that the appraised collateral was in fact worth more than what Mr. Krantz valued it in his appraisals.

The Bank separately argues, in effect, that the appraisals are "false," regardless of whether the Krantz Appraisals were accurate. This is because Mr. Krantz appraised commercial properties without the appropriate license and because the appraisals contained allegedly false certifications, including that Mr. Krantz had no personal interest or bias with respect to the parties involved with the appraisals. Doc. 47, 17–19. It is undisputed that Mr. Krantz does not have a commercial appraisal license and that Mr. Harbison provided financial assistance to Mr. Krantz. According to the Bank, that means that Mr. Krantz's appraisals were "anything but unbiased and were provided at the direct behest of Harbison[,] rendering them false." Doc. 36, at 14. The Bank cites no support in Missouri law for its argument that an otherwise accurate appraisal is rendered "false" because it was performed by an unlicensed appraiser or because the appraiser violated a certification within the appraisal document.[6]

### D. Whether Mr. Krantz Knew His Appraisals Were False or Recklessly Disregarded the Risk That They Were

The Bank must also prove that Mr. Krantz either knew his appraisals were inaccurate or recklessly disregarded the risk that they were false. *McClain ex rel. Rutledge v. James*, 453 S.W.3d 255, 266 (Mo. Ct. App. 2014) ("It is sufficient that [defendant] made the representations without knowledge as to their truth or falsity, when in fact they were false."). To suggest that Mr. Krantz had the necessary knowledge, the Bank points exclusively to the 2021 Declaration signed by Mr. Krantz. In the 2021 Declaration, Mr. Krantz states that Mr. Harbison told Mr. Krantz what the

---

[6] Given Mr. Krantz denies that any connection to Mr. Harbison affected his work, a factual dispute also prohibits the Court from resolving this issue on summary judgment.

11

appraised values needed to be and that Mr. Krantz "just went off what Harbison gave [him] and came up with the market values that [Mr. Harbison] wanted." Doc. 36-1, at ¶ 12.

But Mr. Krantz swears that he signed the 2021 Declaration at the Bank's insistence while he was unrepresented. Mr. Krantz further states in the Opposition Affidavit that he did his own independent investigation to complete the appraisals and relied on professional standards and the advice of colleagues to appraise the properties.

While a jury may reject such testimony and conclude that Mr. Krantz did nothing more than copy the information provided by Mr. Harbison after receiving money from him, the jury could also find that Mr. Krantz did not just rely on Mr. Harbison's information and instead used his best efforts to accurately value the property. Genuine and material factual disputes therefore defeat the Bank's Motion for Summary Judgment with respect to whether Mr. Krantz knew or recklessly disregarded the risk that his representations were false.

### E. Whether Mr. Krantz's Appraisals Damaged the Bank

The Bank must also prove that Mr. Krantz's misrepresentation proximately caused the Bank damages. "The measure of damages in a fraud case is the 'benefit of the bargain rule' which allows the defrauded party to recover the difference between the property's actual value and what its value would have been if it had been as represented." *Carpenter v. Chrysler Corp.,* 853 S.W.2d 346 (Mo. App. 1993). The Bank claims that because of Mr. Krantz's appraisals, it loaned a combined $4,6341,622.18, all of which is now still in default "in the amount of the Indebtedness." Doc. 36, at 17. But the Bank must prove that Mr. Krantz's *misrepresentation* caused its damages, not just that the relevant loans are now in default. While it is unclear, it appears that the Bank has two theories. First, the Bank seems to argue that it has been unable to recover the full value of the now-defaulted relevant loans because the collateral used to secure the loans is actually worth less than its appraised value. Second, the Bank seems to argue that it would not have made the relevant

12

loans but for Mr. Krantz's appraisals, and for that reason, the Bank is entitled to recover the costs it has incurred seeking to foreclose on the collateral securing the relevant loans. But to succeed on either theory, the Bank must still prove that the collateral securing the relevant loans is not enough to cover the monetary costs it incurred issuing the loans. On the summary judgment record, it has not.

First, the Bank says that the relevant loans are in default with a significant outstanding balance. But the Bank does not point to any evidence that shows that the outstanding balance exists because the collateral securing the relevant loans is not (or was not) enough to cover the outstanding balance on the relevant loans. For example, the Bank has not explained how much the collateral is worth now or how much the Bank has recovered or expects to recover once it is able to foreclose on the collateral. Therefore, at the summary judgment stage, the Bank has failed to show that, as a matter of law, it suffered damages because of Mr. Krantz's representations.

Second, to the extent the Bank argues that it was induced into making a loan it otherwise would not have made by Mr. Krantz's appraisals, and therefore was damaged because it now must spend money to foreclose, the Bank still must prove that the collateral is worth less than what is necessary to cover its principal and expenses. Here again, the Bank has not established the actual value of collateral and why that collateral is insufficient to cover any expenses it incurred. For example, while the Bank claims that it suffered damages because it was forced to pursue "a receivership action . . . to protect against the continued degradation of its collateral," Doc. 47, at 22, the Bank has not yet presented evidence that the collateral is insufficient to cover these costs once it is sold.

13

Case 2:22-cv-04080-NKL   Document 52   Filed 06/20/23   Page 13 of 14

Because a reasonable jury could conclude on this record that any damages incurred by the Bank were not proximately caused by Mr. Krantz's appraisals, summary judgment is inappropriate.

## IV. CONCLUSION

Because there are genuine and material factual disputes regarding at least three of the required elements of fraud, the Bank's Motion for Summary Judgment, Doc. 35, is DENIED.

SO ORDERED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: 6/20/2023
Jefferson City, Missouri